# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

vs.

SARAH JANE ADLETA

**CRIMINAL COMPLAINT**

CASE NUMBER: 6:13-mj- 1139

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

Beginning as early as March 2012 and continuing through March 2013, in Seminole County, in the Middle District of Florida, and elsewhere, the defendant used and persuaded minors to engage in sexual activity for the purpose of producing visual depictions and transmitting live visual depictions of such conduct knowing that the depictions would be and were transmitted in interstate commerce and were produced using materials that had been transported in interstate commerce, in violation of 18 U.S.C. § 2251(a).

Beginning as early as March 2012 and continuing through March 2013, in Seminole County, in the Middle District of Florida, and elsewhere, the defendant knowingly distributed and possessed child pornography in and affecting interstate commerce, in violation of 18 U.S.C. § 2252A(a)(2) and (a)(5).

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: ☒ Yes  ☐ No

_____
Signature of Complainant
Rod Hyre, Special Agent

Sworn to before me and subscribed in my presence,

March 15, 2013 _____ at   Orlando, Florida _____

Gregory J. Kelly
United States Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

STATE OF FLORIDA

COUNTY OF SEMINOLE

CASE NO. 6:13-mj- 1139

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT

I, Rod Hyre, being duly sworn, do hereby depose and state as follows:

1. For the past eleven years, I have been employed as a Special Agent with the Federal Bureau of Investigation (FBI). I currently serve as the coordinator for the FBI Crimes Against Children/Innocent Images Unit in Orlando, Florida.

2. As the coordinator for the FBI Innocent Images Task Force, my responsibilities include investigating possible criminal violations of the United States Code. I have received specialized training in the investigation of sex crimes against children, including child exploitation, online enticement of a child to engage in sexual activity, child pornography and internet crimes against children. I have participated in the investigation of persons suspected of violating federal child pornography laws, including 18 U.S.C. §§ 2251(a), 2252 and 2252A. I also have participated in various training courses for the investigation and enforcement of federal child pornography laws in which computers are used as the means for receiving, transmitting, and storing child pornography. Additionally, I have participated in the execution of search warrants involving searches and seizures of computers, computer equipment, software and electronically stored information.

3. This affidavit is submitted in support of an application for the issuance of an arrest warrant for SARAH JANE ADLETA (ADLETA). As set forth in more detail below, I have probable cause to believe that at least as early as in or about March 2012, and continuing through in or about March 2013, in Seminole County, Florida and

elsewhere, ADLETA knowingly used, persuaded and coerced two minors to engage in sexually explicit conduct for the purpose of producing and transmitting live visual depictions of such conduct knowing or having reason to know that such visual depictions would be or had actually been transmitted in interstate commerce, in violation of 18 U.S.C. § 2251(a). I also have probable cause to believe that at least as early as in or about March 2012 and continuing through in or about March 2013, in Seminole County, Florida, ADLETA knowingly distributed and possessed child pornography which had been shipped or transported in or affecting interstate or foreign commerce, or using any means and facility of interstate of foreign commerce, or produced using materials that had been mailed, shipped or transported in interstate commerce, in violation of 18 U.S.C. § 2252A.

4. I make this affidavit from personal knowledge based on my participation in this investigation, information from other criminal investigators, information from law enforcement officers, information from agency reports, and the review of documents provided to me by these witnesses and law enforcement officers. Because this affidavit is being submitted for the limited purpose of seeking an arrest warrant, I have not set forth each and every fact learned during the course of this investigation.

## STATUTORY AUTHORITY

5. Title 18, United States Code, Section 2251(a) prohibits a person from knowingly employing, using, persuading, inducing, enticing or coercing any minor to engage in any sexually explicit conduct for the purpose of producing or transmitting a live visual depiction of such conduct knowing that such visual depiction will be or has been transmitted in interstate commerce or mailed, or using materials that have that

have been shipped or transported in or affecting interstate or foreign commerce. Title 18, United States Code, Section 2252A, prohibits a person from knowingly distributing or possessing any child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, shipped or transported in or affecting interstate commerce, or using any means or facility of interstate commerce, or which was produced using materials that have been shipped or transported in or affecting interstate or foreign commerce.

## DEFINITIONS

6. The following definitions apply to this Affidavit:

   a. "Child Pornography," as used herein, includes the definition in 18 U.S.C. § 2256(8)(a), which defines child pornography, inter alia, as any visual depiction of sexually explicit conduct where the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct. See 18 U.S.C. §§ 2252 and 2256(2).

   b. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

   c. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. See 18 U.S.C. § 2256(2).

## DETAILS OF THE INVESTIGATION

7. On March 14, 2013, the Federal Bureau of Investigation received information that ADLETA may have sent images of herself and her two-year and four-

year old children to Aaron Dixon, who lived in North Carolina. Dixon recently had been arrested for engaging in sexual activity with his four year-old daughter.

8. On March 15, 2013, I, along with another law enforcement officer, contacted ADLETA at her home, located in Seminole County, Florida. ADLETA invited the investigating agents into her home. Law enforcement officers advised ADLETA that she was not under arrest and was free not to speak law enforcement. Subsequently, law enforcement officers advised ADLETA of her Miranda rights, which she said she understood and waived.

9. During her interview, ADLETA admitted that she knew Dixon and had been in contact with him via telephone and the internet as recently as two weeks ago. ADLETA stated that she had physically engaged in sexual intercourse with Dixon approximately five years ago and had continued their relationship via telephone and the internet since then. ADLETA admitted that she engaged in "cybersex" with Dixon approximately once every three weeks and that this was done through the use of Skype and by sending naked images of herself through e-mail and via her phone.

10. ADLETA stated that approximately one year ago she began to take naked pictures of her then three year-old daughter and send them to Dixon. ADLETA admitted to sending approximately ten naked images of her daughter to Dixon via either her Yahoo! e-mail account or with her cellular phone. ADLETA also admitted to performing sex acts with her daughter while sending live transmissions of the abuse using Skype. ADLETA stated that she had licked her daughter's vagina two or three times and broadcast it live to Dixon using Skype. ADLETA estimated that she would engage in this activity for approximately five minutes each time and that she believed her daughter

liked it, because it made her smile. ADLETA admitted to on at least two occasions digitally penetrating her daughter's vagina with the tip of her finger, while Dixon watched over the web cam. On one of these occasions, ADLETA gave her daughter a small amount of rum in an attempt to keep her daughter from being hurt by her finger. Law enforcement officers showed ADLETA four naked images of her daughter which were found in her Yahoo! e-mail account. ADLETA stated that she had taken each of the pictures and remembered sending three of the four pictures to Dixon.

11. ADLETA stated that she also had put her two year-old son's penis in her mouth and sucked on it, and transmitted the act to Dixon using Skype. ADLETA said that she had hoped to replace the sex acts she engaged in with her daughter with sex acts with her son. ADLETA explained that she was not a lesbian and did not like "licking pussy" and was more comfortable performing sex acts with a penis. ADLETA said that Dixon did not enjoy the web-cam of her sexual interaction with her son as much as her sexual interaction with her daughter and therefore did not repeat the act with her son. ADLETA stated that Dixon encouraged her to buy "sounding rods" and insert them in her daughter's urethra while he watched via web cam. ADLETA said that sounding rods were supposed to cause the child to have an orgasm. ADLETA stated that she refused this request from Dixon.

12. ADLETA stated that all the sex acts she performed with her children were either transmitted live to Dixon using Skype, or photographed and sent to him using her e-mail account or cell phone. ADLETA said that Dixon would describe exactly what he wanted her to do with the children and then she would do it. ADLETA described Dixon telling her to spread her daughter's vagina open with her fingers and then take a picture

of it. ADLETA said that this was difficult to do, because of having to hold the cell phone camera in her hand and hold the child with the other hand.

13. ADLETA stated that over the past year, Dixon claimed to be sexually assaulting his own four year-old daughter. ADLETA said that Dixon stated that on approximately six different occasions he had put his penis in his daughter's mouth. Dixon also claimed on approximately six different occasions to having digitally penetrated his daughter's vagina. Dixon told ADLETA that on at least two occasions he had put his penis inside his daughter's vagina and that his daughter made him ejaculate faster than his wife. ADLETA said that she did not think Dixon was raping his daughter, because Dixon told her that his daughter enjoyed these sex acts.

14. During a consensual search of ADLETA'S e-mail account which was conducted in front of ADLETA, agents located three images of child pornography depicting ADLETA'S daughter. ADLETA admitted to producing each image and distributing them to Dixon. The first picture shows the child lying on her back with her legs spread apart and the child's vagina is clearly visible. ADLETA sent this picture to her e-mail account using her I-phone. The second picture shows the child lying on her back with her legs spread apart and the child's vagina is clearly visible. The third picture shows both ADLETA and her daughter naked. ADLETA is shown inserting her tongue into the child's mouth.

15. ADLETA advised that over the past year she has utilized her I-phone, a windows cellular phone, a Toshiba laptop computer and a Macintosh laptop computer for the purpose of producing and transmitting sex acts she performed on her children to

Dixon. ADLETA advised that Dixon had also sent her links to child pornography web sites, that she had viewed them, but did not enjoy looking at child pornography.

16. Based on the above, I have probable cause to believe that at least as early as in or about March 2012, and continuing through in or about March 2013, in Seminole County, Florida and elsewhere, ADLETA knowingly used, persuaded, induced, enticed and coerced two minors to engage in sexually explicit conduct for the purpose of producing and transmitting live visual depictions of such conduct knowing or having reason to know that such visual depictions would be or had actually been transmitted in interstate commerce, in violation of 18 U.S.C. § 2251(a). I also have probable cause to believe that at least as early as in or about March 2012 and continuing through in or about March 2013, in Seminole County, Florida, ADLETA knowingly distributed and possessed child pornography which had been shipped or transported in or affecting interstate or foreign commerce, or using any means and facility of interstate of foreign commerce, or produced using materials that had been mailed, shipped or transported in interstate commerce, in violation of 18 U.S.C. § 2252A.

This concludes my affidavit.

_____
Rod Hyre, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
this 15 day of March, 2013

_____
Gregory J. Kelly
United States Magistrate Judge